UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

DOCKET NO. 15-CV-8427 (PAC; HBP)

ANNE BRYANT,
    PLAINTIFF

-V-

NOEL L SILVERMAN;

PATRICK J MONAGHAN JR;

ABC CORPORATIONS 1-10;

JOHN AND JANE DOES 1-10,
    DEFENDANTS



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-15-18

PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION,
D.I. 161, FILED ON AUGUST 1, 2018,
BY HON. HENRY B. PITMAN, USMJ

Anne Bryant, Plaintiff, Pro Se

(summer address)

P.O. Box 418, 21 Collaberg Road

Stony Point, NY 10980

&lt;accessab@gmx.com&gt;

917-848-5203



RECEIVED AUG 15 2018 U.S.D.C. WP

1

PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION,
(D.I. 161)

1. The Report and Recommendation ("R&R") by Magistrate Judge Pitman denies two Motions for Summary Judgment: those filed by Plaintiff Anne Bryant ("Plaintiff" and first person tense), *D.I.129-136*, and filed by Defendant Patrick Monaghan Jr. Esq. ("Defendant" and "Monaghan"), *D.I. 152-157.*

*Defendant's Motion*

2. It could be sufficient to state that the Defendant's Motion for Summary Judgment ("MSJ") under Rule 56 is "procedurally *improper*;" and to supply the information, *as the R&R does not*, that the Defendant's motion was filed 7 ½ months after the deadline for filing such Motions, pursuant to the Scheduling Order, *D.I. 96,* by Judge Pitman, and pursuant to Fed. R. Civ. P 56(b).

3. But the R&R analyzes the Defendant's improper MSJ *(Id.)*, at length, devoting pages 17 through 24 of the report so to do. In so doing, Judge Pitman puts *mis*-information on the record when he writes: *"Rather than responding to plaintiffs motion [MSJ], (Id.) Monaghan instead cross-moved for summary judgment..."* (R&R at 18). This statement is incorrect, because Monaghan did Respond to Plaintiff's MSJ in a terse Opposition letter, *D.I. 136,* and this Plaintiff Replied to Monaghan's Opposition to Plaintiff's MSJ, *D.I. 139,* citing the Rules ignored by Defendant Monaghan.

4. Because Monaghan has been a practicing lawyer, specializing in litigation for nearly 50 years, he knows the rules, yet he disregards them— *but why?*:

*va subito*

2

DISCUSSION 1

It has not gone un-noticed by this Pro Se Plaintiff that experienced attorneys often file *improper* motions in order to file arguments and evidence that they can make part of the record of the case if an Appeal ensues, and/or develop parts of the improper motion that have not been specifically addressed and denied by the court, for use in later-filed motions or at Trial. But this bad faith practice, *used here,* is not castigated by the court at all; rather, Judge Pitman favors Defendant Monaghan Esq. with a light touch, discussing and/or denying specific points that fall short in the Defendant's MSJ, even quoting his arguments, thus, strengthening the Defendant's *improper* motion, rather than adjudging his motion as one filed in bad faith. (*See* Fed. R. Civ. P. 56(h)); (*and See* Plaintiff's Objections to Monaghan MSJ #2. *D.I. 159).*

*Plaintiff's Motion—New Facts pleaded*
 *Failure to cooperate in Discovery*

5. Plaintiff's Motion for Summary Judgment or Partial Summary Judgment under Fed. R. Civ. P. 56 ("MSJ") is analyzed in the R&R on pages 16 and 17 only; and within that short analysis, the R&R does not give weight to, or mention the fact that the Defendant did not respond as required to the Plaintiff's timely-filed Statement of Material Facts, Motion and Memorandum of Law. According to Local Rule 56.1(c), failure to respond to the Statement of Material Facts deems them admitted. And, *The court does not give reasons*, as Fed.R.Civ. P. 56(a) states that it should, for failing to address, thus denying, the *new facts* alleged in Plaintiff's MSJ.

6. The R&R does not give weight to, or mention the fact that the Defendant did not respond to the Plaintiff's Request for Admissions, thus deeming them admitted, as well.

3

7. And, the R&R does not give weight to or mention the <u>fact</u> that the Defendant did not provide any of documents sought by Plaintiff's Subpoena, needed for impeachment at Trial of his main witness, Kinder, and Defendant's affiants, Korik, Auremmia and Motta, and the former Defendant, Noel Silverman, Esq.

*Again, not following procedure*

8. The defendant and his counsel did not raise objections to the Subpoena, nor seek to quash or modify it, (*See D.I. 139*, Pl's Reply to Def's Opp.). Defendant's counsel, Mr. Mulvehill simply wrote a letter dated 2 days before the discovery materials were due to be received, conveying the message that the Defendant would not cooperate. I received Mr. Mulvehill's letter, sent via 1st class mail, on 10/02/2017—2 days after the close of discovery deadline.

9. My objections to the Defendant's refusal to cooperate needn't be restated here, as those objections, citing the appropriate Fed. R. Civ. P. violations are made in detail in my Reply, *D.I. 139,* to the Def's Opp, *D.I. 136.*

DISCUSSION 2

10. The information discussed herein above (¶¶5—8), begs questions: *<u>Why</u> is it of no moment to the Court that the Defendant did not cooperate in Discovery?* And, *<u>Why</u>* is there no mention in the R&R that the Defendant failed to admit or deny the Statements of Material Facts in Plaintiff's MSJ?

11. Whereas the Plaintiff has been deprived of Discovery materials and responses sought from the Defendant, *<u>Why</u>* hasn't the fact that the Defendant refused to respond to the Statement of Material Facts and Request for Admissions <u>deemed them admitted</u> for all purposes, when both apply to the three litigations in which Defendant Monaghan

4

Esq. represented me? *Why* is none of the relief provided to me by this court that has been prescribed by the Federal Rules of Civil Procedure rule 56(c)(1-4) and Local rule 56.1(c), in the event—*as here*— of a Defendant's failure to respond to a statement of Material Facts. *Why* are Defendant Monaghan Esq. and his counsel, Mr. Mulvehill, permitted to flaunt the Rules with impunity?

12. At 17, the R&R states, *"Plaintiff has not come close to demonstrating that there is 'no issue as to any material fact' here and thus, her motion for summary judgment must be denied."* Plaintiff argues that each of the statements of material facts is annotated as required, with citations to the record of pleadings in the case, and supported by exhibits. Moreover, **new facts** are presented that may be seen to renew Plaintiff's claim that Monaghan withheld vital information and documents from me all along, and is withholding them now, with the [current] motive and the result that Plaintiff will lack that evidence and information for impeachment purposes and for self-defense at Trial. Thus, the **new facts** are relevant to Plaintiff's MSJ.

### *Relevance of Defendant's Failure to cooperate in Discovery*

13. Citations to documents in the record, linked to the citations provided for each statement of material fact, are given at ¶10 of Plaintiff's Declaration *(D.I. 132)*, in connection with Monaghan's Continuous Representation, Inadequate Investigation, Hoarding [withholding] Documents, and Conflict of Interest (protecting Kinder).

### *Relevance to Kinder and Hoarded (withheld) documents*

14. The documents sought by subpoena include approximately 50 union contracts that were exhibited to the 1991 NY State Action[1] complaint. Those documents reveal that

---

[1] NY Supreme Court, Rockland Co., Index No. 8721/91

5

Kinder credited others—(his family and friends)— with the Union wages and pension contributions that were earned by me, that were to have accrued to my Pension retirement benefits, as pleaded in the 1991 complaint, authored by Defendant Monaghan Esq. [2]

15. It is essential to the presentation of my case at Trial that the Defendant produce the subpoenaed documents, including, but not limited to the production of the subpoenaed union contracts needed for the *Voir Dire,* in order to impeach Monaghan and Kinder, especially, and others, at Trial. The court must not aid a renegade lawyer who spoliates documents in order to protect himself and to prevail at Trial, and shields his witness, Kinder, a pension thief, *inter alia,* from being disqualified as a witness at Trial.

16. Furthermore, by withholding the subpoenaed Union contracts, Monaghan is obstructing the justice I deserve, *that is,* the means to restore my Pension to me, and the information I would need to challenge those who have collected my wages and are credited with my Pension contributions and paid my benefits in both unions.

---

[2] In 2007, I happened upon several large stacks of contracts in a supply room at Monaghan's NJ office, comprising virtually all of the union agreements for my music production business with Kinder, (that Monaghan had told me in 1992 that he could not get). The union contracts exhibited to the 1991 complaint are sufficient proof of wage theft and pension theft by Kinder, which have been and are being withheld from me by Monaghan. But taken together with the information on the stacks of contracts that he has withheld since 1992, I could restore my Pension Benefits to the amount that I actually earned, *that is,* an annual pension of well over $100,000. from the AFM, as opposed to the $17,000. Annual pension I receive that is credited to me based upon a relatively small portion of the AFM earnings I from my daily (AFM) arrangements and recording session work. And as I had earned more than double what is shown as my total SAG earnings, which forms the basis of what I receive in Pension Benefits from annually SAG, (only $18,000), the SAG contracts in those stacks would reveal who is credited in my place on SAG recording session contracts, as well. (*See* Am. Compl. D.I. 23, ¶7, *et seq.*)

6

DISCUSSION 3

17. It is fair to point out that the Union Contracts subpoenaed by Monaghan in connection with the 1991 case *(Id.)*, are my files—my property. I paid **$50,000.** in fees to Mr. Monaghan for that suit, and I paid the costs of suit.

18. Another connection to Kinder is that Monaghan— *who had possession of the union contracts, all along, that proved that Kinder steadily practiced pension fraud and wage theft*— ratified an agreement with Kinder in 2004 that would benefit Kinder by exempting him from paying any costs of suit, and benefit Monaghan with an additional $33^{1/3}\%$ contingency fee from Kinder on double the amount of damages in connection to songs—for which Kinder was co-credited— at issue in the 2000 NY State Action.[3] By the letter agreement they ratified in 2004, the costs would fall entirely on me[4], and my contingency fee for Monaghan was **50%**, not the $33^{1/3}\%$ fee that Kinder would pay him. I objected to those terms as unfair to me, and I would not sign the 2004 letter agreement. So, without my knowledge, Monaghan made a private deal with Kinder that benefited only them, when he signed that agreement that I had rejected.

19. Another connection to Kinder, who Monaghan identified as his main Trial witness, is that I also subpoenaed the documents that Monaghan acquired from ASCAP in connection with <u>Anne Marie Bryant,</u> the amateur songwriter, deceased now for many years, who was used and is still being used to collect my royalties—worldwide. Anne Marie Bryant is shown as co-credited (in my place) with Kinder and with Joe Bacal

---

[3] NY Supreme Court, Rockland Co. Index No. 5192/00
[4] My Costs in the 2000 NYS Action exceeded **$100,000.**

(the former major client of our music production business).[5]

*Failure to File documents:*

20. Both the Plaintiff's Request for Admission and the Statement of Material Facts that were not answered (admitted or denied) by Defendant Monaghan seek admissions that he:   Failed to file Affidavits of Default in the "2000 NY State Action" and in the "2007 Federal Action";

   Failed to serve a summons and complaint upon the required parties in the 2007 Federal Action;

   Failed to send copies of Trial subpoenas to adversarial counsel in the 2000 NY State Action, and failed twice to correctly file Pro Hac Vice motions in the 2000 NY State Action, thus causing my Los Angeles expert music publishing co-counsel to be disqualified from representing me in the action, and sanctioned. *See* Pl's Decl. pg. 11-12, ¶19(b). And *see* Pl's Memorandum at 8—Rule 1.1(c)(1)(2), "Competence;" Pl's Memo at 8-9, Rule 1.4, (1)(2)(3), "Communication;" Memo at 6, re: Continuous Representation: *"The Continuous representation doctrine operates as a toll only where there is a mutual understanding of the need for further representation;"* –and *See* footnote 2: *"I relied on Mr. Monaghan's representations to me that the 2007 Federal Action ( 07-cv-6395 PAC;HBP), was necessary…"* (D.I. 93, §IV at pg. 11)

---

[5] A trial subpoena from ASCAP for the 2013 NY State Trial revealed that Anne Marie Bryant was the "Target Party" for ASCAP Party #2901252, who was identified by Hasbro in their recent Appeal Brief (14-cv-5764 LTS) as Dobishinski, the Administrator for Sunbow Productions and Hasbro.

*Inadequate Investigation*

21. Both the Request for Admission and the Statement of Material Facts, which were not admitted or denied by Defendant Monaghan, seek admissions that he <u>did not</u> contact former defendant Silverman, in preparation of the 1991 complaint *(Id.)*, in order to acquire the files that Silverman relied upon during the 1989 settlement negotiation, from which Silverman drafted the 1989 Separation Agreement (*Am. Compl. D.I. 23, Exhibit A*). And Monaghan did not investigate the status of Kinder & Bryant Ltd. At *Pl's Decl. ¶18, et seq., pages 10 – 11*, financial losses from Monaghan's failure to file documents are detailed, *and Pl's Pl's Decl., ¶16, "Injuries that are common to each and every category claimed at (Pl's Decl.) ¶10.*[6]

*Mis-Information in this R&R*

22. By my Motion for Consideration of Judge Crotty's Opinion and Order, *(D.I. 149, undecided)*, I protest the mis-information that was put forth in the R&R filed in Judge Pitman's Opinion and Order, *D.I. 142*.

23. <u>This</u> R&R, *(D.I. 161, at 3)*, repeats some of the same mis-information as was put forth in *D.I. 142, i.e., "In or about 1985, Kinder & Bryant bought out Sarah Aquino's share of the business, and as a result, plaintiff believed that the name of the corporation was changed at that time to Kinder & Bryant Ltd."* <u>Nothing in this statement correct</u>; and, that *"Kinder & Bryant… opened a bank account in that*

---

[6] *At Pl's Decl. pg. 7, ¶ 14, et seq.*, I write, "…Monaghan failed to vigorously advocate in my interests…" "…to carry out duties enumerated at *(Ibid. ¶10)*, causing me <u>losses</u> of rights, remedies and timely access to those records…" At *Pl's Decl. ¶18(b) et seq., pages 10 – 11*, financial <u>losses</u> from Monaghan's failure to file documents are detailed.
At *Pl's Decl. pg. 5, ¶12, et seq.*, I write that Monaghan has represented me in Actions that span more than 25 years in NY courts.

*name.*" <u>This is incorrect</u>, although I allow that it could be inferred from my statement that I had to resign from signing checks.[7]

24. Kinder & Bryant Ltd. was not a *"partnership"* (R&R at 4), it was (mis)represented as a NY corporation in the 1989 Separation Agreement; I believed that Kinder & Bryant Ltd. was the name of the NY corporation that I co-owned and from which I separated in 1989.

25. <u>At 3, this R&R omits</u>: that the IRS informed me in 2012 that Kinder & Bryant Ltd. was a non-entity that <u>did not report and pay taxes</u>: Millions of dollars in fees and reimbursed expenses and re-billed recording costs flowed through the non-entity; *"I got none of that money, but I surely did the work."* (Pl's Decl. pg.11, line 2-3).

26. At 3, this R&R omits the fact that: Kinder merged KBA, a NY corporation into Kinder & Company Inc., <u>a NJ corporation</u>, without filing any merger papers. He didn't notify the states, and he didn't notify me, an equal shareholder; thus, it was an illegal merger.[8] My interests as the co-owner of the actual corporation, KBA have never been settled.[9]

27. At 5, the R&R incorrectly states that I sued Kinder for failing to <u>pay</u> royalties. This is confusing because Kinder did not pay royalties to me; royalties are paid from other sources, as addressed in the 1989 Separation Agreement. The 1989 agreement calls for Kinder to pay contingent compensation to me (*Id.* Ex. A at 1*, et seq.*)

28. At 6, the R&R states incorrectly that *a "stipulation of settlement without prejudice" and a "Stipulation of Discontinuance"* were filed with the court. This is not correct;

---

[7] To my knowledge, however, Kinder had converted the title of the KBA bank account, for which I was a signer, to the K&B Ltd. name.
[8] *(D.I. 23 Am Compl. ¶3,¶5)*
[9] *(D.I. 23 Am. Compl. ¶4, f/n 5; ¶24(c), f/n 14).*

10

those documents were never filed with the court; and never signed off by the other Defendant parties' counsel; and never So Ordered by the court.

29. Plaintiff objects that at 7, the R&R quotes from the Defendant's 56.1 Statement that was filed with his procedurally improper, (**denied**) 2nd Motion for Summary Judgment.

30. At 8, the court is mistaken in saying that *"The [2004] letter [agreement] is initialed by Kinder but not by plaintiff."* This is incorrect: Kinder and Monaghan signed that letter agreement—no initials.

31. Plaintiff objects that at 8, the R&R suggests a negative inference from my decision to bring the newly-discovered material fact[10] that K&B Ltd. was a non-entity, to the attention of the (NY State) court. I was being honest and forthcoming; Monaghan was in favor of keeping the information from the court. But the newly-discovered information about "K&B Ltd." was especially relevant because the agreement litigated in the NY State Action, (the JEM Agreement) was between Sunbow Productions Inc. and the non-entity, "K&B Ltd."

32. Previous and additional mis-statements of the facts are cited and argued in Plaintiff's Motion for Reconsideration, *D.I. 149*.

*Plaintiff has cause for concern*

33. What are the documents that the court is reading? Are they different from the documents I wrote and provided to the court? I ask this because the many mis-statements attributed to me and my complaint are not what I pleaded and exhibited.

---

[10] "Material facts are those which 'might affect the outcome of the suit under governing law'..." (R&R at 11, citing Coppola v. Bear Sterns & Co.)

11

34. Did the fact of Judge Crotty's Orders to truncate the Docket cause my complaint and amended complaint, my exhibits and other pleadings, to disappear, so that Judge Pitman would have to write his R&Rs, and make citations from memory?

35. As to the above, I will write a motion for permission to examine the copies from which the mis-statements, that are prejudicial to me and my case, have been made, in order to ascertain whether my pleadings and exhibits, as written and presented, reached Judge Pitman. If so, I would ask to be shown where the mis-statements I have identified are found in my pleadings; I can't find them.

*Closing*

36. I aver my Motion for Summary Judgment or Partial Judgment should not be denied. My allegations are proved by what <u>I actually wrote and exhibited</u> in the pleadings in this case, and in this Motion, *i.e.* Defendant Monaghan Esq. did not cooperate in Discovery; he did not respond to the Request for Admissions, nor did he provide the documents commanded by subpoena, nor did he file any motion that would excuse him from doing so, or file a motion to modify my requests, (Pl's Pl's Decl., pg. 2, ¶3); and the Defendant did not respond to the Statement of Material Facts in this MSJ, which deems them admitted.

37. It is a fact that Defendant Monaghan Esq. represented me (continuously) in 3 prior, related actions in the NY courts. By his own admission, he did not call for documents utilized in the negotiation and drafting of the 1989 Separation Agreement, (D.I. 23, Am. Compl., Ex. A); and that he did not research the status of Kinder & Bryant Ltd. in preparation of the 1991 complaint that he wrote (without my assistance),[11] is a

---

[11] Monaghan has written in his letters to the court that I had 0% knowledge of the law.

plain fact (Pl. Memorandum pg. 9, §I, Rule 1.1 "Competence;" ); and it is a fact that he did not sign the complaint, as mandated by 22 NYCRR § 130-1.1-a. (Pl. Memorandum at 7). And, in the 1991 action against Kinder and his family and friends, Defendant Monaghan Esq. withheld a massive number of union agreements that provide much more evidence of wage theft and pension fraud by Kinder, and it is a fact that he is withholding them now in defiance of a subpoena, protecting Kinder, in so doing.

38. It is a fact that Defendant Monaghan continued to mis-represent Kinder & Bryant Ltd. as my corporation in the 2000 NY State Action, and in the 2007 Federal Action; and that he did not bother to check its status for those cases either. And, it is a fact that he did not file default affidavits against non-responding parties in the 2000 NY State Action and in the 2007 Federal Action. And, it is a fact, as the docket shows, that Monaghan did not file affidavits of service of the summons and complaint to Required Parties in the 2007 Federal Action—parties whose counsel pleaded dismissal motions without entitlement to do so.

39. It is a fact that Defendant Monaghan Esq. did not send copies of the subpoena in the NY State Action that he served on former defendant, BMI, and that he twice did not file Pro Hac Vice motions in the NY State court action, thus causing my expert music publishing counsel to be disqualified from representing me in that case. And, it is a fact that the letter agreement between Kinder and Monaghan benefits both of them, leaving me to pay the highest contingency fee, and to pay the costs for that suit; and it is a fact that neither the 2001 Stipulation of Settlement without prejudice with Kinder

and the Discontinuance of Action that Monaghan signed (unknown to me) with Kinder's attorney, were <u>not</u> filed with the court.

40. In consideration of the above, why must I do more to prove this motion?

41. And, specific to Defendant's refusal to produce the documents commanded by subpoena, how can I be expected to prepare my best case for Trial if Defendant Monaghan Esq. is withholding the documents needed, in defiance of a Judicial Subpoena?

Thank you for your consideration.

Respectfully submitted, 8/15/18

### Affirmation under penalty of Perjury

I Affirm that the statements by me herein have been truly made, and believed by me to be true and correct.

*Anne Bryant*
_____
Anne Bryant, Plaintiff, Pro Se


To the Court on 8/15/18 BY HAND

Attorneys receive filed documents via ECF notification emails. A copy via email will also be sent this date via email.