UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNE BRYANT,

    Plaintiff,

-against-

NOEL L. SILVERMAN, ESQ. *et. al.*,

    Defendants.

No. 15-CV-8427 (PAC)(HBP)

# DEFENDANT PATRICK J. MONAGHAN, JR.'S OBJECTION
## TO REPORT AND RECOMMENDATION DATED AUGUST 1, 2018

**O'NEILL, DiMANNO & KELLY ESQS.**
15 Beekman Street
New York, New York 10038
Tel: (212) 267-5556

**PATRICK J. MONAGHAN, JR., ESQ.**
C/O BEATTIE PADOVANO LLC
50 Chestnut Ridge Road
Montvale, New Jersey 07645
Tel: (201) 799-2152

Attorneys for Defendant PATRICK J. MONAGHAN, JR.

Dated: August 15, 2018

## Table of Contents

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .................................................................................................................. 5

    I.    The Exhibit F Letter Establishes That There Is No Issue Of Material Fact And Summary Judgment Should Be Granted Dismissing The Conflict Of Interest Claim. .................................................................................................... 5

    II.   Plaintiff's Remaining Malpractice Claim Fails As A Matter Of Law. .................. 10

    III.  This Court Can And, In The Interests Of Justice And Judicial Economy Should, Entertain Defendant's Summary Judgment Motion. ............................... 15

CONCLUSION ............................................................................................................. 17

# Table of Authorities

## Cases

*Achtman v. Kirby, McInerney & Squire LLP*,
    464 F.3d 328 (2d Cir. 2006) .................................................................................. 13, 15

*Barnett v. Mount Vernon Police Dep't*,
    No. 10 Civ. 03899, 2012 WL 733865 (S.D.N.Y. Mar. 5, 2012) ...................................... 5

*Berbick v. Precinct 42*,
    977 F. Supp. 2d 268 (S.D.N.Y. 2013) ............................................................................ 5

*Bonano v. Doe*,
    628 F. App'x 25 (2d Cir. 2015) ............................................................................... 4, 16

*Brusso v. Imbeault*,
    699 F. Supp. 2d 567 (W.D.N.Y. 2010) ......................................................................... 17

*Bryant v. Broadcast Music, Inc.*,
    122 A.D.3d 564 (2d Dep't 2014) ............................................................................ 13, 14

*Esposito v. Noto*,
    132 A.D.3d 944, 19 N.Y.S.3d 300 (2d Dep't 2015) ....................................................... 7

*Estate of Re v. Kornstein Veisz & Wexler*,
    958 F. Supp. 907 (S.D.N.Y. 1997) ............................................................................... 14

*Geonaga v. March of Dimes Birth Defects Foundation*,
    51 F.3d 14 (2d Cir. 1995) ............................................................................................. 10

*Grier v. Chu*,
    No. 10 Civ. 5514, 2012 WL 4108106 (S.D.N.Y. June 26, 2012) ................................. 17

*Hatfield v. Herz*,
    109. F. Supp. 2d 174 (S.D.N.Y. 2000) ......................................................................... 11

*Ianazzo v. Day Pitney LLP*,
    No. 04 Civ. 7413, 2007 WL 2020052 (S.D.N.Y. July 10, 2007) ................................. 15

*Johnson v. County of Nassau*,
    480 F. Supp. 2d 581 (E.D.N.Y. 2007) .................................................................... 10, 11

*Kaminsky v. Herrick Feinstein LLP*,
    59 A.D.3d 1, 870 N.Y.S.2d 1 (1st Dep't 2008) .............................................................. 7

*Kirk v. Heppt,*
    532 F.Supp. 2d 586 (S.D.N.Y. 2008) .................................................................. 13

*Kulak v. City of New York,*
    88 F.3d 63 (2d Cir. 1996) .................................................................................... 9

*Lawson v. Homenuk,*
    710 F. App'x 460 (2d Cir. 2017) ......................................................................... 9

*Linde v. Arab Bank, PLC,*
    No. cv-04-2799, 2009 WL 1743988 (E.D.N.Y. June 18, 2009) ......................... 6

*Remy v. Beneri,*
    No. 09-CV-4444, 2011 WL 5546237 (E.D.N.Y. Nov. 9, 2011) ......................... 9

*Stonewell Corp. v. Conestoga Title Ins. Co.,*
    678 F. Supp. 2d 203 (S.D.N.Y. 2010) ........................................................... 7, 14

*U.S. v. Zarrab,*
    No. 15-cr-867, 2017 WL 946334 (S.D.N.Y. Feb. 15, 2017) ............................... 9

*Vermont Mutual Ins. Co. v. McCabe & Mack LLP,*
    105 A.D.3d 837, 964 N.Y.S.2d 160 (2d Dep't 2013) ........................................ 12

*Woods v. Ruffino,*
    8 F. App'x 41 (2d Cir. 2001) ............................................................................... 8

**Rules**

Fed. R. Civ. P. 72(b)(3) ................................................................................................ 5

Defendant Monaghan respectfully submits the following limited objection to the Report and Recommendation of Magistrate Judge Pitman dated August 1, 2018 ("Report and Recommendation") pursuant to 28 U.S.C. Sec. 636 (b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Report and Recommendation should be adopted, with two exceptions. The Report and Recommendation correctly rejects Plaintiff's motion for summary judgment and reaffirms the dismissal of all but two of Plaintiff's claims (both for malpractice). Defendant objects to the Report and Recommendation solely to the extent of respectfully submitting that no issue of material fact exists as to those two remaining malpractice claims. They too should be dismissed, so that this long-running litigation against a 77-year-old lawyer by a very difficult former client can be concluded in the interests of justice and judicial efficiency.

First, the Report and Recommendation recommends that the District Court deny Defendant's motion for summary judgment regarding plaintiff's claim for malpractice based on the alleged conflict of interest presented by Defendant's joint representation of plaintiff and Dr. Ford Kinder, without ever mentioning a September 25, 2006 letter attached as Exhibit F to the Affidavit of Patrick J. Monaghan, Jr. (the "Exhibit F Letter"). This letter was not previously submitted in connection with the prior motion for summary judgment in this matter.[1] Judge Pitman may have overlooked the Exhibit F Letter, which

---

[1] Indeed, in the Declaration of Patrick J. Monaghan supporting Defendant's renewed motion for summary judgment, Defendant apologized for the inability to locate the

1

was countersigned by Plaintiff but not Dr. Kinder, because he mistakenly believed it was the same as a September 12, 2006 letter also countersigned by Plaintiff that he does mention at page 20 of the Report and Recommendation. The Exhibit F Letter is a different document, however – and entirely extinguishes Plaintiff's claim of a conflict of interest. First, the letter specifically reflects Plaintiff's explicit consent to the joint representation and to the fee arrangement that she now alleges was unfair to her (she signs as "accepted"; the letter states in the very first paragraph that both Dr. Kinder and Ms. Bryant are clients and contains a paragraph on page 2 spelling out the "litigation fees and costs" sharing arrangement).

In addition, the Report and Recommendation (citing this Court) held that "because Plaintiff continued to allege that she did not approve the 2004 Letter Agreement, a question of material fact still existed as to whether Monaghan had a conflict of interest at the time he agreed to represent Kinder." (Report and Recommendation at 21.) The 2004 Letter Agreement set forth an agreement for Defendant to pursue claims by both Plaintiff and Dr. Kinder for royalties and included a contingency fee agreement with Kinder. As Judge Pitman noted, "Plaintiff states that this letter reflects 'the terms of Attorney Monaghan's representation of Kinder . . . that Plaintiff expressly rejected and would not authorize." (Report and Recommendation at 8.) But the Exhibit F Letter – again, signed as "[a]ccepted" by Ms. Bryant – expressly

---

Exhibit F Letter sooner. (May 3, 2018 Declaration of Patrick J. Monaghan, D.E. 153 ¶23.)

states that "you also confirm your authorization and retention of [Defendant's law firm] to pursue any claims you may have with respect to the compositions mentioned in our July 2, 2004 to[sic] letter to [Kinder] and set forth again below . . . ". (Exhibit F Letter, D.E. 153-6.) In other words, the question of material fact cited by the Report and Recommendation is eliminated by the Exhibit F Letter. Ms. Bryant, in writing, "confirm[ed]" and "[a]ccepted" the exact same terms as the 2004 Letter Agreement, with explicit reference to that 2004 Letter Agreement. (*Id.*)

Second, the Report and Recommendation recommends that the District Court deny Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's malpractice claim based on Defendant's alleged failure to seek a default judgment or properly serve subpoenas on a third party in connection with a lawsuit he filed on Plaintiff's behalf in New York Supreme Court in 2000. As a matter of law, however, a lawyer does not commit malpractice by a selection of one among several reasonable courses of action. The Report and Recommendation cites a single case, *Vermont Mutual Insurance Co. v. McCabe & Mack LLP*, as "implying" that "failure to timely pursue default judgment may constitute legal malpractice." (Report and Recommendation at 24.) But the allegations in *Vermont Mutual* were not that the counsel simply did not timely file a default judgment. Instead, the allegations were that the law firm lied and said it *had* filed a default judgment when it had not – and fraudulently billed the client for the motion it never made.

This is a very different situation and not one that can support a malpractice claim. There is no open question of material fact: no motion for a default judgment was made,

3

and the subpoenas were not re-issued and re-served after a defendant in the 2000 litigation complained that it did not receive proper notice. But those are exactly the types of choices that as a matter of law cannot be second guessed by a disgruntled client to give rise to a malpractice cause of action (even by a *pro se* plaintiff).

The Report and Recommendation criticizes Defendant for filing a successive motion for summary judgment; it is true that this was an additional motion for summary judgment filed by the Defendant after the Motion to Dismiss was converted to a Motion for Summary Judgment that was granted in part and denied in part. "District Courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought." *Bonano v. Doe*, 628 F. App'x 25, 27 (2d Cir. 2015) (summary order). Defendant respectfully requests that the Court exercise that discretion here and grant summary judgment dismissing the two remaining claims. Defendant wishes to assure the Court that this is not a case where Defendant strategically held back material facts in order to "treat [the] initial summary judgment motions as a 'dry run' which [he] would have an opportunity to redo or supplement." (Report and Recommendation at 23.) It was not until the other claims in a diffuse Amended Complaint (which the Report and Recommendation correctly characterizes as "the primary factual basis of plaintiff's Amended Complaint") were cleared away – and Plaintiff reversed her dismissal of the case and herself moved for summary judgment – that Defendant recalled and recognized the critical significance of the Exhibit F Letter to the conflict of interest claim.

## ARGUMENT

It is well settled that a district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). To that end, the district judge may "modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also Berbick v. Precinct 42*, 977 F. Supp. 2d 268, 273 (S.D.N.Y. 2013) (declining to adopt report and recommendation and instead granting defendants' motion for summary judgment); *Barnett v. Mount Vernon Police Dep't,* No. 10 Civ. 03899, 2012 WL 733865, at *1 (S.D.N.Y. Mar. 5, 2012) (rejecting magistrate judge's report and recommendation and instead granting defendants' motion to dismiss in its entirety). In the present case, a *de novo* review of the magistrate judge's findings requires granting summary judgment in favor of Defendant on the two remaining claims.

### I. The Exhibit F Letter Establishes That There Is No Issue Of Material Fact And Summary Judgment Should Be Granted Dismissing The Conflict Of Interest Claim.

The Report and Recommendation overlooks the Exhibit F Letter; it is never mentioned at all. But the Exhibit F Letter, which was not presented in connection with the first Motion to Dismiss (which was converted by the magistrate judge into the prior Motion for Summary Judgment) conclusively establishes that there is no dispute of material fact and summary judgment should be granted dismissing Plaintiff's malpractice claim based on an alleged conflict of interest. *See Linde v. Arab Bank, PLC*, No. cv-04-2799, 2009 WL 1743988, at *1 (E.D.N.Y. June 18, 2009) (withdrawing portions of a

Report and Recommendation which were based on "overlooked factual information and arguments submitted by the defendant").

The Report and Recommendation accurately recounts the allegations underlying Plaintiff's claim that Defendant acted wrongfully in representing both Plaintiff and her former business partner, Ford Kinder, after they agreed to cooperate in pursuing royalty claims against third parties in connection with the settlement of prior litigation by Plaintiff against Kinder:

> Plaintiff alleges that this was a conflict of interest and constituted malpractice. In support of this assertion, plaintiff cites to a July 2, 2004 letter agreement sent by Monaghan to Kinder, a copy of which was sent to plaintiff. This letter memorializes plaintiff's right to pursue some of Kinder's claims with respect to certain performance royalties that were at issue in the 2000 N.Y.S. Action . . . The letter is initialed by Kinder but not by plaintiff. Plaintiff states that this letter reflects "the terms of Attorney Monaghan's representation of Kinder . . . that Plaintiff expressly rejected and would not authorize".

(Report and Recommendation at 8 (internal citations omitted).)

As the Report and Recommendation correctly notes, allegations of a conflict of interest do not support liability for malpractice unless "the client can show that he or she suffered actual damage as a result of the conflict." (Report and Recommendation at 13 (citing *Esposito v. Noto*, 132 A.D.3d 944, 945, 19 N.Y.S.3d 300, 302 (2d Dep't 2015), *quoting Tabner v. Drake*, 9 A.D.3d 606, 610, 780 N.Y.S.2d 85, 88-89 (3d Dep't 2004); *see also Kaminsky v. Herrick Feinstein LLP*, 59 A.D.3d 1, 13, 870 N.Y.S.2d 1, 9 (1st Dep't 2008).) *See also Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203,

6

211-12 (S.D.N.Y. 2010) (a "conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action….[Plaintiff] must still establish that such a conflict caused an actual injury.") (internal quotation marks omitted). Both the August 1, 2018 Report and Recommendation and the one recommending denial of the first Motion for Summary Judgment with respect to the conflict of interest claim relied on Plaintiff's allegation that she suffered harm because in the July 2004 Letter Agreement "Monaghan and Kinder negotiated terms that were unfair to her without plaintiff's input and agreement" as creating an issue of material fact precluding summary judgment.

But the Exhibit F Letter demonstrates that there is no issue of material fact: Plaintiff knew about and approved both the joint representation and the terms of the July 2004 Letter Agreement. The Exhibit F Letter states that both Kinder and Plaintiff are clients and that "in order to avoid any misunderstanding, it is best to clarify the arrangements about the case and any recovery and the sharing in the case." It then recites the agreement with respect to performance royalties and other royalties; it goes on to describe exactly the agreement with respect to litigation fees and costs, including the contingency fee arrangement with Dr. Kinder.

The Exhibit F Letter then contains a paragraph D "Authorization" which states:

> You also confirm your authorization of [Defendant's law firm] to pursue any claims you have with respect to the compositions mentioned in our July 2, 2004 to[sic] letter to you and set forth again below:
>
> 1) GI Joe [movie theme]

        2) My Little Pony
        3) My Little Pony and Friends (sometimes "Funny Friends")
        4) Feature Songs from The Jem Show
        5) Inhumanoids
        6) Visionaries
        7) Robotics
        8) Big Foot and the Muscle Machines
        9) Transformers
        10) Jem Theme

(Exhibit F Letter, D.E. 153-6 at 2.)

The Exhibit F Letter was not merely sent to Plaintiff. She signed it and faxed it back to the Defendant in accordance with the instructions outlined in the last paragraph: "[i]f the foregoing confirms the agreement accurately, please sign where indicated it and return it by fax which we agree will be sufficient." (Exhibit F Letter, D.E. 153-6 at 3.) Plaintiff expressly agreed to all of the terms of the joint representation and to the arrangement between Monaghan and Kinder outlined in the July 2004 Letter Agreement; she cannot create an issue of fact by turning her back on that agreement now and making allegations contrary to the undisputed evidence. *See Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) (affirming summary judgment and observing that "[r]eliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment"); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"); *see also Lawson v. Homenuk,* 710 F. App'x 460, 464 (2d Cir. 2017) ("The argument is defeated by precedent holding that a party cannot 'create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'"); *Remy*

*v. Beneri*, No. 09-CV-4444, 2011 WL 5546237, at *5 (E.D.N.Y. Nov. 9, 2011) (granting summary judgment for defendants and observing that "it is well settled that plaintiff cannot create an issue of fact by recanting earlier testimony").

This Court earlier expressed a reservation about relying upon a different letter that, like the Exhibit F Letter, was countersigned by Plaintiff and not Dr. Kinder. (March 6, 2017 Opinion and Order, D.E. 76 at 7-8; Report and Recommendation at 20.) It is clear, however, that the legally relevant signature is Plaintiff's: a client cannot assert a conflict of interest where that client has signed an agreement consenting to the joint representation with knowledge of its terms. *See U.S. v. Zarrab*, No. 15-cr-867, 2017 WL 946334, at *4 (S.D.N.Y. Feb. 15, 2017) (in light of written waiver, finding that client – "with 'eyes wide open' – knowingly, intelligently, and rationally accept[ed]" the potential conflicts and limitations of law firm's representation). Moreover, it is Plaintiff who asserted that she did not know or approve of the 2004 Letter Agreement. Her signature on the Exhibit F Letter conclusively confirms that she did, without regard to whether Dr. Kinder countersigned. Summary judgment dismissing the conflict of interest-based malpractice claim is appropriate.[2]

---

[2] Summary judgment in favor of Defendant on this claim is appropriate for the additional reason that Plaintiff – who bears the burden of proof – has adduced no proof or evidence challenging Defendant's undisputed description of the events at issue. *See Geonaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 583 (E.D.N.Y. 2007). The Report and Recommendation recognizes Plaintiff's meager charges on this claim: "[P]laintiff does not address why she is entitled to judgment as a matter of law on these claims in her motion papers" and "[P]laintiff's *only* statement concerning this claim is that [Defendant] 'hoarded documents' from her previous New York State actions would implicate Kinder in major frauds and would be further evidence

## II. Plaintiff's Remaining Malpractice Claim Fails As A Matter Of Law.

Plaintiff's remaining malpractice claim based on Defendant's decision not to file default judgments and failure to provide copies of two subpoenas to BMI to Sunbow (a defendant in the 2000 N.Y.S. Action) is not clearly articulated. As the Report and Recommendation notes, Plaintiff does not mention the subpoenas at all in her summary judgment submission and makes only a conclusory allegation that the failure to seek default judgments (which she describes as "affidavits of default") cost her over two million dollars in damages. (Report and Recommendation at 17.) She offers no actual evidence in support of either claim in support of her motion for summary judgment, or in opposition to Defendant's motion for summary judgment. That alone should defeat her remaining malpractice claim, as to which she bears the burden of proof. *Geonaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim"); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 583 (E.D.N.Y. 2007) ("Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer persuasive evidence that [her] claim is not implausible") (internal quotation marks omitted and alterations in original).

---

that Monaghan and Kinder 'are allied'." (Report and Recommendation at 16-17, emphasis added.)

But more fundamentally, it is clear that the undisputed facts here are legally insufficient to support a malpractice claim. With respect to the decision not to seek a default judgment, Defendant set forth in his Rule 56.1 Statement and accompanying Declaration that this was based on his judgment that the service of the complaint on the allegedly defaulting defendants was potentially subject to challenge. (Defendant's Rule 56.1 Statement, D.E-156 at ¶¶42-47; May 3, 2018 Declaration of Patrick J. Monaghan, D.E. 153 ¶¶25-34.) One of the defendants, for example, had refused to confirm his identity to the process server. (*Id.*; *see also* Exhibit T to Plaintiff's Amended Complaint ("Am. Compl."), D.E. 23-1.) Plaintiff offered no countervailing testimony or evidence, but in any event, the decision not to seek a default judgment under those circumstances is exactly the type of decision entrusted to a lawyer's discretion that cannot be second-guessed in a malpractice claim as a matter of law. *Hatfield v. Herz*, 109. F. Supp. 2d 174, 180 (S.D.N.Y. 2000) (granting summary judgment in favor of defendant lawyer in malpractice case where plaintiff complained of lawyer's failure to call certain witnesses, introduce certain documents, and otherwise file and litigate particular pretrial motions, because "allegations that amount to nothing more than plaintiff's 'dissatisfaction with strategic choices ... do not support a malpractice claim as a matter of law'").

The Report and Recommendation relies on a single case, *Vermont Mutual Ins. Co. v. McCabe & Mack LLP,* 105 A.D.3d 837, 964 N.Y.S.2d 160 (2d Dep't 2013) as implying that a failure to timely file a default judgment can support a claim for malpractice. (Report and Recommendation at 24.) A review of the case confirms that to be an overreading of the holding. In *Vermont Mutual*, the Second Department reversed

11

the trial court's dismissal of a fraud claim – not a malpractice claim – on the ground that there were potential damages for fraud that were not entirely duplicative of the damages for a separate claim for malpractice, the sufficiency of which was not addressed by the appeal. The plaintiff did not merely allege that the defendant law firm failed to file a motion for a default judgment (let alone that the defendant made a strategic decision not to do so because of issues with service of the complaint upon the allegedly defaulting defendants, as the undisputed evidence here establishes). Instead, the allegation was that the law firm committed fraud by misrepresenting that it had filed a default judgment and billing plaintiff for a motion that it never made, filed or drafted. Lending some credence to the allegations, the law firm wrote off the entirety of the bill for the (allegedly non-existent) default judgment motion. The issue before the appellate court was whether that write-off precluded the fraud claim; the court held that it did not because the plaintiff might be able to establish fraud damages different from the damages recoverable in the malpractice claim. Thus, *Vermont Mutual* in no way represents an exception for default judgments to the general rule that a lawyer's decisions to pursue or forego particular litigation strategies are, as a matter of law, not subject to challenge in an action for malpractice. *See, e.g., Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (holding that "[a] complaint that essentially alleges either an 'error of judgment' or a 'selection of one among several reasonable courses of action' fails to state a claim for malpractice.") (citations omitted).

Plaintiff's malpractice claim with respect to the BMI subpoenas is even less well developed. Paragraph 41(a) of the Amended Complaint refers merely to Defendant's

alleged "failure to serve *copies* of 2 BMI subpoenas upon adversarial counsel." (Am. Compl., D.E. 23 ¶41(a)(emphasis added)). The undisputed and indisputable facts are that Defendant prepared and served subpoenas upon BMI, a third-party to the 2000 action. A defendant in the 2000 action, Sunbow, complained that it was not properly provided with copies of the BMI subpoenas; the Appellate Division agreed that Sunbow should have been noticed but found that it suffered no harm from the lack of copies (in part because BMI did not produce any documents in response to the subpoenas) and was not entitled to sanctions. *Bryant v. Broadcast Music, Inc.*, 122 A.D.3d 564, 565 (2d Dep't 2014) ("Sunbow was not prejudiced thereby, as none of the documents sought was actually produced."). Of course, if Sunbow was not damaged by the failure to receive copies of the subpoenas, still less was Plaintiff damaged by the failure to provide Sunbow with copies of the BMI subpoenas. *See, e.g., Kirk v. Heppt*, 532 F.Supp. 2d 586, 591 (S.D.N.Y. 2008) (holding that a required element of a malpractice claim is that the lawyer's alleged misconduct proximately caused harm to plaintiff). Indeed, the reason for the rule requiring provision of copies of a third-party subpoena to an opposing party is that otherwise the party issuing the subpoenas might obtain an unfair *advantage.*

The most generous interpretation of Plaintiff's claim with respect to the subpoenas – and one as to which she has come forward with zero evidence or even allegations – would be that Defendant should have re-issued and re-served the BMI subpoenas with proper notice to Sunbow once Sunbow's complaint about the lack of copies was known. But it is pure speculation as to whether BMI would have responded (it indisputably did not produce documents in response to the first subpoenas, *see Bryant*,

13

122 A.D.3d at 565) and that if it had, the documents it produced would have been favorable, let alone dispositive, to Plaintiff's case. *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (because a malpractice claim requires actual damage proximately caused by the attorney's alleged breach of the duty of care, plaintiff must show that the outcome would have been changed if the challenged decision had been different). This is exactly the type of speculative second-guessing about evidence that could have, would have, should have been elicited that courts have found as a matter of law will not support a malpractice claim. *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 923 (S.D.N.Y. 1997) (taking note of defendant's delay in complaining about the alleged malpractice and finding that "plaintiffs' hindsight determination that defendants' [sic] were not rigorous enough" is "precisely the sort of second-guessing of counsel's strategic judgment ... [t]hat do[es] not rise to the level of legal malpractice") (internal quotation marks omitted and alteration in original); *see also Ianazzo v. Day Pitney LLP*, No. 04 Civ. 7413, 2007 WL 2020052, at *9 (S.D.N.Y. July 10, 2007) (granting summary judgment in favor of attorneys and holding that "reasonable strategic decisions made by an attorney in the course of representing a client [including as to forms of evidence and which witnesses to call] do not amount to malpractice").

At times the Report and Recommendation seems to suggest that as long as Plaintiff asserts that Defendant's decisions not to seek default judgments or with respect to the BMI subpoenas were unreasonable, a question of fact exists as to whether Defendant made the correct choice that precludes summary judgment. (Report and Recommendation at 24.) But the malpractice caselaw makes clear that this is exactly the

type of "Monday morning quarterbacking" that the courts will not engage in; otherwise, every client unhappy with the outcome of a litigation or transaction could bring a triable malpractice claim. Instead, only a very narrow category of conduct, none of which is alleged (let alone established by evidence) here, can support a claim for malpractice. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F. Supp. 3d 328, 337 (2d Cir. 2006) ("Generally, an attorney may be held liable only for ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.").

### III. This Court Can And, In The Interests Of Justice And Judicial Economy Should, Entertain Defendant's Summary Judgment Motion.

The Report and Recommendation criticizes the Defendant's Motion for Summary Judgment as "procedurally improper" and notes that "no federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment." (Report and Recommendation at 23, citing *Church v. Financial Recovery Servs., Inc.*, 2018 WL 1383231 at *4.) Defendant acknowledges that this is his second Motion for Summary Judgment (following conversion of a 2016 motion to dismiss to a Rule 56 Motion), but respectfully requests that the Court exercise its discretion to grant the Motion, for the following reasons:

- The Exhibit F Letter was not part of the original Motion for Summary Judgment not because Defendant was engaging in any gamesmanship but because Defendant had not remembered it or recognized its significance at the time of the original Motion. (May 3, 2018 Declaration of Patrick J. Monaghan, D.E. 153 ¶23 (apologizing for not locating Exhibit F sooner).) This action is brought by a *pro se* plaintiff who has made diffuse allegations that can be difficult to parse. Responding comprehensively yet

Defendant recognizes that *pro se* plaintiffs are afforded greater latitude than other litigants and that successive motions for summary judgment are disfavored. Defendant nonetheless respectfully submits that there is no procedural bar to the Court granting his motion for summary judgment dismissing the remaining claims where, as here, there are no issues of material fact remaining to be tried and requests that the Court rule accordingly, in the interests of justice and judicial economy.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Report and Recommendation be modified to dismiss the remaining two causes of action.

Respectfully Submitted,

_____
PATRICK J. MONAGHAN, JR., ESQ. [6297]
c/o Beattie Padovano, LLC
50 Chestnut Ridge Road
Montvale, NJ  07645
Phone:  (201) 799-2148
Fax:      (201) 573-9736
Email:  Pmonaghan@beattielaw.com

O'NEILL, DI MANNO & KELLY
URBAN S. MULVEHILL, ESQ. [8529]
15 Beekman Street
New York, New York 10038
Phone:  (212) 267-5556
Fax:      (212) 227-3235
Email:  Odklaw@erols.com

Dated:  August 15, 2018
            Montvale, New Jersey